IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| WALL & ASSOCIATES, INC., )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>BETTER BUSINESS BUREAU OF )<br>CENTRAL VIRGINIA, INC. *et al.*, )<br>)<br>*Defendants*. )<br>) | Civil No. 1:16-cv-119<br><br>Hon. Liam O'Grady |

## Order

After its tax settlement business received low ratings from several regional Better Business Bureaus, plaintiff Wall & Associates, Inc. ("Wall") sued the Better Business Bureau Serving Central Virginia, Inc. ("Virginia BBB"), the Better Business Bureau of Metropolitan Washington, Inc. ("Washington BBB"), and the Council of Better Business Bureaus, Inc. ("CBBB") for false advertising, tortious interference with contract and business expectancy, and defamation. Defendants move to dismiss for failure to state a claim under Rule 12(b)(6). (Dkt. No. 16). The Court heard argument on May 6, 2016. For the reasons stated below, the Court will grant the motion to dismiss and dismiss the complaint without prejudice.

### I. Background

CBBB is a not-for-profit organization that purports to provide consumers with objective, unbiased assessments of local businesses. Compl. ¶¶ 14, 18. CBBB licenses the Better Business Bureau name and model to a network of not-for-profit regional bureaus. *Id.* ¶¶ 16, 18. There are two components of the BBB model—business reviews and business accreditation. Each regional BBB maintains a website with a free, searchable database of reviews of businesses in the region.

1

A business review contains background information on a business, an indication of whether the business is BBB accredited, and a grade on a scale of A+ to F generated by thirteen "elements." *Id.* ¶ 25. BBBs generate revenue through accreditation of businesses. The CBBB does not accredit businesses, but indirectly benefits through regional BBBs annual licensing fees. *Id.* ¶ 42.

Wall "is in the business of assisting individuals and businesses with the resolution of tax problems." Compl. at 2. Without recounting every detail, it suffices to say that Wall has had a long and tumultuous relationship with the BBB. During the time Wall was headquartered in Washington, D.C., the Washington BBB assigned Wall a "C-" grade that was later downgraded to an "F." *Id.* ¶¶ 57, 65. When Wall moved to Virginia, the Virginia BBB graded Wall a "C-" (later downgraded to a "D-") and also placed an "alert" on Wall's review page, warning consumers of a "pattern of complaints" against Wall. *Id.* ¶¶ 71, 80. Wall's efforts to understand the basis underlying the grades and the alert has been marked by a lack of transparency and a general contempt for the type of services that Wall offers.

Wall alleges that it has been significantly harmed by Defendants' actions. Existing customers have breached contracts and potential customers have declined to work with Wall "on the basis of the Defendants representations." *Id.* ¶ 144. Wall filed suit against Defendants seeking damages and injunctive relief.

## II. Discussion

Defendants move to dismiss Wall's Lanham Act claim for failure to adequately allege statutory standing. The Supreme Court recently considered the statute's language that "any person who believes he or she will likely to be damaged by [false advertising]" may bring a civil action. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014)

(quoting 15 U.S.C. § 1125(a)(1)(B)). Prior to *Lexmark*, there was a split among the courts of appeals as to "the appropriate analytical framework for determining a party's standing to maintain an action for false advertising." *Id.* at 1385. The Court rejected all of the lower court tests, replacing them with a two-part analysis: "To invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) [1] an injury to a commercial interest in sales or business reputation [2] proximately caused by the defendant's misrepresentations." *Id.* at 1395. The Court made clear that standing is "an element of the cause of action under the statute . . . . [that] must be adequately alleged at the pleading stage in order for the case to proceed." *Id.* at 1391 n.6.

Defendants contend Wall's asserted injury is too attenuated from Defendants' alleged misrepresentations. In *Lexmark*, the Court recognized that proximate causation has not always been susceptible to a clear definition, but the Court explained that in the context of the Lanham Act a plaintiff "ordinarily must show economic or reputational injury *flowing directly* from the deception wrought by the defendant's advertising." *Id.* at 1392 (emphasis added); *see also id.* at 1390 ("The question it presents is whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits."). Thus, the question for the Court is whether Wall has adequately alleged that it can "trace its economic or reputational damage directly to defendant's misrepresentation." McCarthy on Trademarks and Unfair Competition § 27:30 (4th ed.).

Wall's claim is not based on any false or misleading statements of fact made by a BBB about Wall's business. Instead, the claim centers on Defendants' self-characterizations of the BBB rating system in promoting its accreditation services. Wall alleges that Defendants falsely advertise and promote the rating system as a national, uniform, and unbiased standard when in reality it is implemented by regional, independent licensees applying their own "subjective,

3

biased, and personal criteria."[1] Compl. ¶¶ 15–16, 149, 151. Wall asserts it has been injured by these misrepresentations "because consumers believe that [it] has been subjected to a national, uniform, unbiased, and objective review process when in reality its rating is the result of subjective, biased, and arbitrary decisions made by the Central Virginia BBB and Washington D.C. BBB." *Id.* ¶ 153; *see also id.* ¶ 147. Because of that, consumers rely on BBB reviews and Wall's business suffers.

To get from Point A to Point B requires the following causal chain: Defendants' statements about its *own* product are false and misleading → Those statements generate consumer reliance and trust in BBB reviews and accreditations → Defendants utilize that trust in selling accreditation (the commercial link) → Consumers rely on Defendants' reviews of, and statements about, *Wall's* business → Consumers withhold or withdraw business from Wall. This is are far removed from the "classic Lanham Act false-advertising claim in which one competitor directly injures another by making false statements about his own goods or the competitor's goods and thus inducing customers to switch." *Lexmark*, 134 S. Ct. at 1391 (internal quotations and alterations omitted); *see also Belmora LLC v. Bayer Consumer Care AG*, 2016 WL 1135518 (4th Cir. March 23, 2016). While the Supreme Court rejected a requirement that the plaintiff and defendant be in direct competition with one another, the Court did note that "a plaintiff who does not compete with the defendant will often have a harder time establishing proximate causation." *Id.* at 1392. That is certainly the case here where the relationship is between a consumer review business and a tax settlement business. Wall asserts that there is overlap between the two

---

[1] Subsumed in Defendants' statutory standing argument is the argument that the statements at issue are not "commercial advertising or promotion" within the meaning of the statute. Because the Court concludes Wall's claim fails under *Lexmark* as currently pled, it need not reach this question. *Cf. Lexmark*, 134 S. Ct. at 1385 n.1. Of course, the fact that Wall paints the statements about the rating system as a commercial promotion of BBB's accreditation services provides further attenuation in the causal chain.

businesses because Defendants' promotion of the rating system targets individuals and businesses who are potential Wall customers. The argument is that any individual or business who uses the BBB must also pay taxes and therefore may potentially need a tax-settlement business. That is too flimsy a connection.

If Wall has suffered any direct injury, it is from the BBB's grades and the "alert" on Wall's webpage. But Wall cannot rely on those statements because they are almost certainly non-actionable statements of opinion.[2] It appears that Wall, aware of that fact, has attempted to identify other statements a few steps removed in the causal chain to try to make its claim. While the asserted injury may have been proximately caused by the unfavorable ratings, Wall has not adequately alleged a direct injury caused by Defendants' characterizations of its rating system as uniform, objective, and unbiased.

### III. Conclusion

In sum, Wall's allegations, taken as true, are insufficient to establish proximate causation and the claim must be dismissed. Without a remaining basis for federal jurisdiction, the Court dismisses the complaint in its entirety. If Wall has a good faith belief that the defect may be cured by amendment, it may file an amended complaint within **thirty (30) days** of the date of this Order. Failure to do so will result in dismissal with prejudice.

It is **SO ORDERED**.

May 31, 2016
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

---

[2] Courts have considered whether a BBB grade or other similar rating can be a defamatory statement and have universally concluded that they are non-actionable opinions. *See, e.g., Aviation Charter, Inc. v. Aviation Research*, 416 F.3d 864, 870 (8th Cir. 2005); *Compuware Corp. v. Moody's Investors Servs., Inc.*, 499 F.3d 520, 529 (6th Cir. 2007); *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 357 (Tex. Ct. App. 2013); *Castle Rock Remodeling v. Better Bus.*, 354 S.W.3d 254, 241 (Mo. App. 2011).